# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

IN RE:

**RALPH MCDONALD FOSTER**                    **18-80466**
                                             **CHAPTER 13**


## AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC
## STAY OF SECTION 362 AND CODEBTOR STAY OF SECTION 1301 OR IN
## THE ALTERNATIVE ADEQUATE PROTECTION

**COMES NOW** Wells Fargo Bank, N.A. and respectfully shows the Court the following:

1.    On June 27, 2018, the Debtor(s), Ralph McDonald Foster, filed a petition with the Bankruptcy Court for the Middle District of North Carolina under Chapter 13 of Title 11 of the United States Code.

2.    On the date the petition was filed, the Debtor(s) and Shyvonne L Steed-Foster (Co-Debtor) was the owner of real property with an address of 308 South Bend Drive, Durham, NC 27713 ("Property") and more particularly described in the Deed of Trust referred to below.

3.    The Deed of Trust secures a Note in favor of TBI Mortgage Company, in the original principal amount of $340,506.00, dated February 26, 2010 ("Note"), a copy of which is attached as "Exhibit 1."

4.    The Property is subject to the first lien of the Movant by the Deed of Trust recorded in the Durham County Public Registry, ("Deed of Trust"), a copy of which is attached as "Exhibit 2."

5.    Debtors executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

6.    Including the instant case, this is the second filing of the Debtor, Ralph McDonald Foster.

7.    Ralph Foster filed a Chapter 13 case on July 12, 2016 (16-80601) and was subsequently dismissed on May 15, 2017, for failure to make payments and failure to present a confirmable plan. On November 30, 2017, the case was terminated.

403-NTL-V9

8.   In addition to the previous bankruptcy, the Debtor has been involved in numerous unsuccessful lawsuits against Wells Fargo Bank, N.A., both before and after the first Chapter 13 case, which have frustrated foreclosure efforts and the rights of the Creditor since 2012.

9.   On June 27, 2018, the Debtor, Ralph McDonald Foster, filed the present bankruptcy case.

10. The mortgage payments are severely delinquent. Upon information and belief, from Wells Fargo Bank, N.A., the amount of the default, exclusive of attorney fees and costs, is as follows:

| | |
|---|---|
| 11 payments at $2,397.47 | $26,372.17 |
| September 1, 2011 To July 1, 2012 | |
| 46 payments at $2,474.10 | $113,808.60 |
| August 1, 2012 To May 1, 2016 | |
| 10 payments at $2,538.54 | $25,385.40 |
| June 1, 2016 To March 1, 2017 | |
| 12 payments at $2,570.04 | $30,840.48 |
| April 1, 2017 To March 1, 2018 | |
| 3 payments at $2,593.60 | $7,780.80 |
| April 1, 2018 To June 1, 2018 | |
| 3 payments at $2,590.32 | $7,770.96 |
| July 1, 2018 To September 1, 2018 | |
| Less Suspense | ($0.00) |
| TOTAL PAYMENTS DUE | $211,958.41 |

11. Upon information and belief, the last payment received by the Creditor was received April 9, 2012 which brought the loan due for September 1, 2011.

12. The Debtor has proposed to pay the loan through the plan, but has estimated installment payments of $900.00 and arrearage of $49,260.00, this drastically understates the on-going payments as well as the arrearage owed to Wells Fargo Bank, N.A.

13. The estimated payoff good through September 24, 2018 is $506,148.58

14. The scheduled value of the subject property is $458,344.00. This information was obtained from Schedule D.

15. It is clear from the past cases, the severity of the delinquency, and gross understatements in the plan that the Debtor does not have a real intent to pay this loan, and as such the Creditor is not adequately protected. Further, the property is not necessary for an effective reorganization, and there is no equity in the property, Wells Fargo Bank, N.A., is entitled to relief from the Automatic Stay pursuant to Section

362(d)(1) and (2) and Codebtor Stay of Section 1301(a) of the Bankruptcy Code for cause shown including, but not limited to, lack of adequate protection.

16. This motion shall serve as notice to the Debtor and Co-Debtor that the Movant will collect reasonable attorney fees and costs as allowed by the Note and Deed of Trust.

**WHEREFORE,** Wells Fargo Bank, N.A. prays the Court as follows:

1.   Modify the Automatic Stay of Section 362(a) and 1301(a) of the Bankruptcy Code to permit Wells Fargo Bank, N.A. to enforce its security interest in the real property of the Debtors.

2.   As an alternative to the relief prayed for above, grant adequate protection to Wells Fargo Bank, N.A. for its interest in the property of the Debtor(s) and Co-Debtor.

3.   Modify Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Wells Fargo Bank, N.A. may immediately enforce and implement this order granting relief from the automatic stay.

4.   Modify Rule 3002.1(b) and Rule 3002.1(c) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case as to Wells Fargo Bank, N.A..

5.   Grant Wells Fargo Bank, N.A. reasonable costs and attorney fees incurred in connection with this proceeding; and,

6.   Grant Wells Fargo Bank, N.A. such other and further relief as may seem just and proper.

7.   The Movant further seeks relief to contact the Debtor by telephone or written correspondence and, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

8.   The Movant further requests that this Court require the Debtor to obtain court approval of any future agreements or modifications which increase or reduce the Debtor's disposable income and/or which affect the ability of the Debtor to perform under the Chapter 13 Plan.

This the 1st day of October, 2018.

*/s/ William P. Harris*
William P. Harris, Attorney for Creditor, Bar # 48633
wharris@logs.com |704-831-2343
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Jonathan Davis
jodavis@logs.com | 704-831-2392
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

**IN RE:**

**RALPH MCDONALD FOSTER**                                      **18-80466**
                                                              **CHAPTER 13**


**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing and annexed pleading or paper upon:

(Served via U.S. Mail)
Ralph McDonald Foster
308 South Bend Drive
Durham, NC 27713


(Served via U.S. Mail)
Shyvonne L Steed-Foster
308 South Bend Drive
Durham, NC 27713


(Served via Electronic Notification Only)
Ralph McDonald Foster
308 South Bend Drive
Durham, NC 27713


(Served via Electronic Notification Only)
Richard M. Hutson, II
Chapter 13 Office
P. O. Box 3613
Durham, NC 27702


by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

This the 1st day of October, 2018.

/s/ William P. Harris
William P. Harris, Attorney for Creditor, Bar # 48633
wharris@logs.com |704-831-2343
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Jonathan Davis
jodavis@logs.com | 704-831-2392
Electronic Service Notifications: ncbkmail@shapiro-ingle.com



MIN:                     Loan Number:

# NOTE

FHA Case No.

FEBRUARY 26, 2010                HORSHAM                    PENNSYLVANIA
[Date]                            [City]                     [State]

308 SOUTH BEND DRIVE, DURHAM, NORTH CAROLINA 27713
[Property Address]

## 1. PARTIES
"**Borrower**" means each person signing at the end of this Note, and the person's successors and assigns.
"**Lender**" means  TBI MORTGAGE COMPANY, A CORPORATION
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
THREE HUNDRED FORTY THOUSAND FIVE HUNDRED SIX AND 00/100
Dollars (U.S. $ 340,506.00                )
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of  FIVE AND 000/1000                    percent
(    5.000  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st   day of each month beginning
on  APRIL 1, 2010        . Any principal and interest remaining on the  1st   day of
MARCH, 2040              , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at  DEPT. 291601 P.O. BOX 67000, DETROIT,
MICHIGAN 48267-2916
, or at such other place
as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,827.91
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                        Page 1 of 3          DocMagic eForms 800-649-1362
                                                              www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                          percent (      4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
RALPH M. FOSTER          -Borrower

_____ (Seal)
SHYVONNE L.              -Borrower
STEED-FOSTER

_____ (Seal)          _____ (Seal)
-Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                               -Borrower

WITHOUT RECOURSE, PAY TO THE ORDER OF:

Wells Fargo Bank N.A.
TBI MORTGAGE COMPANY
BY: Denise Esposito
Denise Esposito
Assistant Secretary

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
By _____
Scott M. Swanson
Assistant Vice President

[Sign Original Only]

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                Page 3 of 3          DocMagic eForms 800-649-1362
                                                      www.docmagic.com





FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2010 MAR 02 10:23:51 AM
BK:6428 PG:134-146 FEE:$63.00

INSTRUMENT 

# DEED OF TRUST

| FHA CASE NO. |
| --- |
| Loan Number: |

This Instrument Prepared By:
TBI MORTGAGE COMPANY
250 GIBRALTAR ROAD
HORSHAM, PA 19044
After Recording Return To:
TBI MORTGAGE COMPANY
250 GIBRALTAR ROAD
HORSHAM, PENNSYLVANIA 19044

Moore & Alphin, PLLC (10-TOLL-0010SY.)

MIN:

THIS DEED OF TRUST ("Security Instrument") is made on   FEBRUARY 26, 2010
The grantor is   RALPH M. FOSTER AND SHYVONNE L. STEED-FOSTER, Husband and Wife

("Borrower").

The trustee is   MOORE & ALPHIN, PLLC
3716 NATIONAL DRIVE SUITE 100, RALEIGH, NORTH CAROLINA 27612
("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
TBI MORTGAGE COMPANY, A CORPORATION

("Lender")
is organized and existing under the laws of   DELAWARE                              , and
has an address of   250 GIBRALTAR ROAD, HORSHAM, PENNSYLVANIA 19044

The name of the Mortgage Broker is   N/A
Borrower owes Lender the principal sum of   THREE HUNDRED FORTY THOUSAND FIVE
HUNDRED SIX AND 00/100                    Dollars (U.S. $ 340,506.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on   MARCH 1, 2040
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced

---

FHA NORTH CAROLINA DEED OF TRUST - MERS
NCDOTZ.FHA 11/01/08                        Page 1 of 9                        DocMagic eForms 800-649-1362
www.docmagic.com

under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in   DURHAM                                County, North Carolina:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
   as Exhibit A

which has the address of   308 SOUTH BEND DRIVE

[Street]

DURHAM                    , North Carolina   27713              ("Property Address"):

[City]                                       [Zip Code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge**. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges**. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements

FHA NORTH CAROLINA DEED OF TRUST - MERS
NCDOTZ.FHA  11/01/08                        Page 2 of 9                        *DocMagic eForms* 800-649-1362
www.docmagic.com

or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3.   Application of Payments** . All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>FIRST</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>SECOND</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>THIRD</u>, to interest due under the Note;

<u>FOURTH</u>, to amortization of the principal of the Note; and

<u>FIFTH</u>, to late charges due under the Note.

**4.   Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations

concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property**. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees**. Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt**.

    **(a) Default**. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval**. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver**. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured**. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS              from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement**. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver**. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers**. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices**. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability**. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

FHA NORTH CAROLINA DEED OF TRUST - MERS
NCDOTZ.FHA  11/01/08                                  Page 5 of 9                    *DocMagic* eForms 800-649-1362
www.docmagic.com

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of          5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally**

entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Attorneys' Fees.** Attorneys' fees must be reasonable.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
RALPH M. FOSTER              -Borrower

_____ (Seal)
SHYVONNE L.                   -Borrower
STEED-FOSTER

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

FHA NORTH CAROLINA DEED OF TRUST - MERS
NCDOTZ.FHA  11/01/08                Page 8 of 9          DocMagic eForms 800-649-1362
                                                        www.docmagic.com

—————————————————— [Space Below This Line For Acknowledgment] ——————————————————

North Carolina,

DURHAM _____ County

I, the undersigned _____ , do certify that

RALPH M. FOSTER AND SHYVONNE L. STEED-FOSTER

_____

_____

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this the _____26th_____ day of _____February 2010_____ .

```
ROGER C WHITE
NOTARY PUBLIC
WAKE COUNTY, NC
My Commission Expires 2-11-2014
```

(Seal)

Notary Public _____

My commission expires: _2-11-2014_

FHA NORTH CAROLINA DEED OF TRUST - MERS
NCDOTZ.FHA  11/01/08                    Page 9 of 9                    *DocMagic eForms* 800-649-1362
www.docmagic.com

Exhibit A

Lying and being in the City of Durham, Triangle Township, Durham County, North Carolina, and being more particularly described as follows:

All of Lot 11 in THE HILLS AT SOUTHPOINT, Phases 1A, 1B and 2, as shown on a plat thereof recorded in Plat Book 181, Pages 39-64 (Page 45), Durham County Registry, to which plat reference is hereby made for a more particular description.

AND SUBJECT TO the revised impervious surface calculations as shown on a map recorded in Plat Book 185, Page 229, Durham County Registry.

FHA Case No.: ▓▓▓▓▓▓
Loan Number: ▓▓▓▓▓▓

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this            26th            day of
FEBRUARY, 2010                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to  TBI MORTGAGE
COMPANY, A CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
        308 SOUTH BEND DRIVE, DURHAM, NORTH CAROLINA 27713

[Property Address]

The Property is part of a planned unit development ("PUD") known as:
            HILLS AT SOUTHPOINT

[Name of Planned Unit Development]

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included within the term
"extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to
Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the required coverage
is provided by the Owners' Association policy.  Borrower shall give Lender prompt notice of any
lapse in required hazard insurance coverage and of any loss occurring from a hazard.  In the event
of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to
the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

FHA - MULTISTATE PUD RIDER
USFHAP.RDR  10/29/08                          Page 1 of 2          *DocMagic eForms* 800-649-1362
                                                                   *www.docmagic.com*

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.   Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.


_Ralph M. Foster_ (Seal)
RALPH M. FOSTER                  -Borrower

_Shyvonne Steed Foster_ (Seal)
SHYVONNE L.                       -Borrower
STEED-FOSTER


_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower


_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower


FHA - MULTISTATE PUD RIDER
USFHAP.RDR  10/29/08                    Page 2 of 2                    DocMagic eForms  800-649-1362
                                                                      www.docmagic.com



FOR REGISTRATION REGISTER OF DEEDS
Willie L. Covington
DURHAM COUNTY, NC
2012 FEB 08 02:23:40 PM
BK:6900 PG:576-578 FEE:$26.00
INSTRUMENT ▮▮▮▮▮▮

Prepared By: Kaying Vang, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-018, MINNEAPOLIS, MN 55467-8000 (651) 605-9342

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Durham, North Carolina
"FOSTER"
**SELLER'S LENDER ID#:** G09/UM
**INVESTOR'S LOAN #:** N/A
**POOL #:** N/A
**NEW SERVICER'S #:** N/A
**OLD SERVICING #:** N/A

**MERS ▮▮▮▮▮▮▮▮▮▮** SIS #: 1-888-679-6377

Date of Assignment: February 2nd, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TBI MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: RALPH M. FOSTER AND SHYVONNE L. STEED-FOSTER, HUSBAND AND WIFE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TBI MORTGAGE COMPANY, A CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Deed of Trust: 02/26/2010 Recorded: 03/02/2010 in Book/Reel/Liber: 6428 Page/Folio: 134-146 as Instrument No.: ▮▮▮▮▮▮ In the County of Durham, State of North Carolina.

Property Address: 308 SOUTH BEND DRIVE, DURHAM, NC 27713

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $340,506.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TBI MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS
On _2/6/12_

By: _____
        Ryan Amato, Vice-President

Return to:
* WELLS FARGO HOME MORTGAGE
P.O. BOX 1629
MINNEAPOLIS MN 55440

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On _2̲6̲-̲1̲2̲_, before me, _Angela Marie Williams_, a Notary Public in Dakota County in the State of Minnesota, personally appeared _Ryan Amato_, Vice-President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TBI MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the assignment of the above-referenced Deed of Trust.

WITNESS my hand and official seal on _2̲.̲6̲-̲1̲2̲_

_Angela Marie Williams_
Notary Expires: _1̲3̲1̲2̲0̲1̲7̲_

ANGELA MARIE WILLIAMS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2017

(This area for notarial seal)

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, WELLS FARGO BANK, N.A. MAC: X9999-018PO BOX 1629, MINNEAPOLIS, MN  55440-9790



WILLIE L. COVINGTON
REGISTER OF DEEDS, DURHAM COUNTY
DURHAM COUNTY COURTHOUSE
200 E. MAIN STREET
DURHAM, NC 27701

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of recorded document, and must be submitted with original for re-recording and/or cancellation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Filed For Registration:** | **02/08/2012 02:23:40 PM** |
| **Book:** | **RE   6900  Page: 576-578** |
| **Document No.:** | ███████████ |
| | **ASGM   3 PGS   $26.00** |
| **Recorder:** | **SHARON M CEARNEL** |