

SO ORDERED.

SIGNED this 20th day of November, 2018.

                                                  */s/ Lena Mansori James*
                                                  LENA MANSORI JAMES
                                    UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Ralph Foster,** | ) | **Case No. 18-80466** |
| | ) | |
| **Debtor.** | ) | **Chapter 13** |
| | ) | |

### ORDER GRANTING MOTION TO DISMISS

       This case came before the court for hearing on November 15, 2018, after due and proper notice, upon the Trustee's objection to confirmation of plan and motion to dismiss case. Benjamin Lovell appeared on behalf of the Standing Trustee, the Debtor appeared pro se, and William Harris appeared on behalf of Wells Fargo Bank, N.A. After considering the matters set forth in the objection, the motion to dismiss, the arguments of counsel for the Trustee and of the Debtor, and all other matters of record in this case, and taking judicial notice of the Debtor's prior case, the court makes the following findings and conclusions:

1. The Debtor filed the above-captioned petition for relief under Chapter 13 of the Bankruptcy Code on June 27, 2018. This case is the Debtor's second filing under Chapter 13; his prior case (Case No. 16-80601) was filed on July 12, 2016 and dismissed prior to confirmation of a plan.

2. In the prior case, the Debtor proposed five plans over the course of ten months. Trustee objected to all of the proposed plans, and the court sustained each of the Trustee's objections. The case was dismissed after the court made findings including that (1) the Debtor's plan was not feasible and the Debtor had not shown that he could make the necessary plan payments; (2) the Debtor's plan was not proposed in good faith; (3) the Debtor was seeking to hinder or delay creditors; and (4) secured and priority creditors had been prejudiced by the Debtor's unreasonable delay in proposing a confirmable plan.

3. Turning to the present case, the Debtor did not file his schedules and statements required by 11 U.S.C. § 521 with the petition. On June 28, 2018, the clerk's office issued a notice to the Debtor of missing schedules and statements, including the Notice to creditors and Proposed Plan, and noted that the missing documents were due July 11, 2018.

4. On July 6, 2018, the Debtor filed a motion to extend the deadline to file schedules and statements, requesting an additional 21 days. The court entered an order granting an extension of time through August 1, 2018 to file the required schedules and statements.

5. As in the previous case, the Debtor's schedules show that he owns two pieces of real property located in Durham County, his residence which he valued at $378,000.00 and a townhome which he valued at $125,000.00, as well as three vehicles.

6. Wells Fargo has filed a claim in the amount of $501,728.68 secured by the Debtor's residence, showing an arrearage claim of $207,732.64 and an escrow deficiency for funds advanced in the amount of $50,572.72. The note dated February 10, 2010 and attached to Wells Fargo's claim reflects a principal amount of $340,506.00 and requires monthly payments of principal and interest in the amount of $1,827.91. The claim also shows that as of July 2018, monthly payments with escrow were $2,590.32.

7. The Debtor admits that he has not made a mortgage payment since 2012 and has been party to litigation with Wells Fargo for years. Most recently, the Debtor has filed an adversary proceeding asserting many claims such as discharge of lien, violations of Truth in Lending Act, unfair business practices, violations of N.C. Gen Stat § 75-50 et seq., breach of contract, fraud, and breach of fiduciary duty. He requests (1) that the court declare Wells Fargo has no right to foreclose under the facts and circumstances of the case, (2) that he recover "compensatory, actual and future damages and statutory damages and punitive damages suffered by reason of the conduct," and (3) alternatively, that the court order Wells Fargo to perform all conditions precedent prior to commencing any foreclosure proceedings.

8. CarMax Auto Finance has filed a claim in the amount of $12,221.73 secured by a lien on the Debtor's 2011 Toyota.

9. State Employee's Credit Union has filed a claim secured by the Debtor's townhome in the amount of $54,067.99, and also a general unsecured claim in the amount of $3,548.69.

10. Ally Financial has filed a claim in the amount of $11,033.45 secured by a lien on the Debtor's 2012 Volkswagen.

11. The Internal Revenue Service has filed a secured claim in the amount of $40,231.98 for 2012, 2014, and 2016 income taxes, and a priority claim of $1,273.67 for 2017 income taxes. The North Carolina Department of Revenue has filed a claim in the amount of $3,727.02, with a priority claim of $1,171.40 for 2016 and 2017 income taxes.

12. The Debtor also lists the claim of Flagship Credit Acceptance secured by a 2012 Volkswagen.

13. As to his income, the Debtor's Schedules I and J and Form Amended 122-C are difficult to comprehend. On his Schedule I, the Debtor lists his gross monthly income as $4,333.00 and his spouse's gross income as $6,444.00. The Debtor also lists $8,997.00 in combined monthly net income, $6,912.00 in monthly expenses and $2,085.00 in monthly

net income on his Schedule I and J. On Form 122-C, the Debtor lists his gross wages as $4,359.00 per month and his spouse's gross wages as $2,465.00 per month, with combined monthly income of $11,276.00. The Debtor has clarified through testimony that he has monthly gross wages of $4,359.00 and his spouse has "a bit more" than $2,465.00, such that his gross household income, excluding rental income, is approximately $6,800.00. The Debtor also receives $845.00 per month in rental income from the townhome.

14. The Debtor has filed four plans in this case. In his first plan, he proposed plan payments of $1,721.00 for 60 months, with that full amount to be paid to Wells Fargo each month.

15. On September 11, 2018, the Debtor filed his first amended plan ("Second Plan"), again proposing a plan payment of $1,721.00 per month for 60 months, but with Wells Fargo receiving just $900.00 per month. The Debtor proposed to make payments on IRS and vehicle claims directly. He proposed no dividend to unsecured creditors.

16. Wells Fargo subsequently filed a motion seeking relief from the automatic stay and co-debtor stay. In the motion, Wells Fargo asserts that the Debtor has not made payments on his mortgage since 2012, that the Debtor's plan does not adequately provide for the maintenance and cure of Wells Fargo's claim, and that the Debtor did not have sufficient income for a plan that would do so.

17. The Trustee objected to the Debtor's Second Plan on the grounds that (1) plan payments were not sufficient to pay all secured and priority claims in full as required by 11 U.S.C. § 1322(d); (2) the plan did not comply with 11 U.S.C. § 1322(d)(4) as there appeared to be non-exempt equity in a townhome sufficient to pay some dividend to unsecured claims; (3) the Debtor had provided no sound reason to overturn the presumption created in 11 U.S.C. § 1326(c) in favor of the Trustee making payments to creditors on the IRS claim and the vehicle claims; and (4) that the plan was not proposed in good faith as required by § 1325(a)(3).

18. On October 17, 2018, the day before the hearing on Wells Fargo's motion, the Debtor filed a second amended plan ("Third Plan"). Under this Third Plan, the Debtor proposed to make payments of payments of $4,309.67 per month for 60 months to the Trustee. This plan further provides for the payment of all vehicle and tax claims through the plan and the maintenance and cure of the Wells Fargo mortgage with payments of $900.00 a month.

19. At the hearing on its motion for relief from stay, Wells Fargo requested that its motion be granted, asserting that the Debtor had not made payments on his mortgage since 2012, that the Debtor's prior bankruptcy case had been dismissed with a finding that the Debtor was seeking to hinder and unreasonably delay creditors, that the Debtor's plan did not adequately provide for the maintenance and cure of Wells Fargo's claim, and that the Debtor did not have sufficient income for a plan which would cure the arrearage. The Trustee supported Wells Fargo's motion and expressed concern that the Debtor was acting in the same manner and with the same intentions as his prior case.

20. The court treated the October 18, 2018 hearing on Wells Fargo's motion as preliminary in light of the fact that the Debtor's Third Plan provided for a substantial increase in the plan payments, giving the Debtor until the court's next hearing date to comply with the terms of his newly proposed Third Plan. Despite grave concerns, the court afforded the Debtor an opportunity to show that he was making a good faith effort to propose and comply with his Chapter 13 plan by bringing his newly proposed plan payments of $4,309.67 current before the next hearing. The court further advised the Debtor that his plan payments would have to be increased after October to accommodate the filed claims.

21. Rather than paying his proposed plan payment of $4,309.67 and bringing his Third Plan current, on October 26, 2018 the Debtor filed a motion for reconsideration, clarification, and an extension of time to which he attached a "revised second amended plan" ("Fourth Plan"). Under his Fourth Plan, the Debtor decreases plan payments, proposing to pay $914.70 in October to bring his plan up to date retroactively, $3,487.23 in November and December, $3,827.28 in January, and then finally payments of $4,350.78 for the remainder of the plan.

22. The Trustee moves to dismiss the case, asserting that cause exists under § 1307(c) on the basis that the Debtor's Third Plan is not feasible and cannot be confirmed. The Trustee contends that even if the Debtor could afford his proposed plan payments of $4,309.67, a fact that the Trustee does not concede, the plan payments are grossly insufficient to address the claims in the case. Per the Trustee's calculations, set forth in detail in his motion, plan payments of $9,059.00 per month are required to address claims filed in the case.

23. The Trustee further argues that the case should be dismissed on the basis of bad faith in light of the Debtor's proposal to retain a primary residence requiring high payments, a townhome, and three vehicles while paying no dividend to unsecured creditors. Wells Fargo supports the Trustee's Motion, asserting that the plan is not feasible and the proposed plan payments are insufficient to pay Wells Fargo's claim and other claims in the case.

24. In response to the Trustee's assertion that the Debtor cannot propose a feasible plan, the Debtor contends that payments of $1,721.00 per month will cover Wells Fargo's claim because he will show $1,721.00 is the correct payment amount in his adversary proceeding against Wells Fargo. Even so, the Debtor offers no clear explanation as to why he proposes no payments to Wells Fargo for escrow (Wells Fargo paid the Debtor's real property taxes of more than $5,900.00 last year) or on the arrearage claim. Even if the Debtor were to show that his ongoing mortgage payments should be $1,721.00 per month, he has not paid his mortgage in over five years—Wells Fargo's arrearage claim will be significant.

25. As the court held in the Debtor's previous case, the Debtor's plan is not feasible if it is entirely contingent upon obtaining a favorable ruling in his adversary proceeding. *In re Foster*, No. 16-80601 (Bankr. M.D.N.C. May 15, 2016). Thus, the Debtor's proposed plan payments are insufficient, and the Debtor simply does not have sufficient income to

      fund a feasible plan while retaining his residence. Debtor's failure to propose a feasible plan constitutes cause to dismiss under § 1307(c).

26. Likewise, as in the Debtor's prior case, the court finds cause to dismiss this case due to unreasonable delay by the debtor that is prejudicial to creditors. A debtor's "unjustified failure to file a reasonable plan of reorganization in a timely fashion" is a type of delay that warrants dismissal under §1307(c)(1). *In re Stevenson*, 583 B.R. 573, 580 (B.A.P. 1st Cir. 2018).

27. Here, the Debtor's Fourth Plan is actually less feasible than his Third Plan as it reduces the total amount he will pay into the plan. The court afforded the Debtor great latitude for ten months in his prior case, only to conclude that the Debtor was acting to hinder and delay rather than to propose a plan in good faith. From the outset of this case, the Debtor has had the benefit of his experience in his last case, including the Trustee's numerous objections and the court's detailed orders, such that he had an ample understanding of what the Bankruptcy Code requires of a Chapter 13 debtor. Under these circumstances, the Debtor is not justified in his failure to file a reasonable plan by this point in the case, nor in his repeated amendments of his plan which have in turn delayed any meaningful plan confirmation hearing. This delay is prejudicial to his creditors as they have yet to receive any disbursement on their claims, and specifically to Wells Fargo, as its arrearage continues to grow with each passing month and it will soon be time to make yet another property tax payment to Durham County on the Debtor's behalf.

28. Finally, based on the Debtor's actions after the October 18 hearing, the court finds that the Debtor is not acting with an intent to propose a plan in good faith. The Debtor was advised by both the Trustee and the court, in no unequivocal terms, that his plan payments would need to be more than that proposed in his Third Plan to deal with the filed claims in his case. The Debtor subsequently filed the Fourth Plan with reduced plan payments. Also, despite the Trustee's objections for the Debtor's failure to propose an adequate dividend to general unsecured creditors, the Debtor's most recent plan still proposes none.

    Therefore, after consideration of the foregoing, the Trustee's motion to dismiss is granted, and this case is dismissed.

END OF DOCUMENT

PARTIES TO BE SERVED

Ralph McDonald Foster
18-80466 C-13


Ralph McDonald Foster
308 South Bend Drive
Durham, NC 27713

Shyvonne L. Steed Foster
308 South Bend Drive
Durham, NC 27713

William P. Harris
Shapiro & Ingle
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

Richard M. Hutson, II
Chapter 13 Office
P.O. Box 3613
Durham, NC 27702

William P. Miller
101 South Edgeworth St.
Greensboro, NC 27401